UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELENA M. GARABIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 10-2150 (ABJ) |
| | ) |
| UNKNOWN OFFICERS OF THE | ) |
| METROPOLITAN POLICE, | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Elena M. Garabis brings this action against defendants Unknown Officer(s) of the Metropolitan Police and the District of Columbia ("D.C." or "the District"), alleging one claim of assault and battery and two claims of excessive force and unreasonable seizure arising under the Fourth Amendment. The District filed a partial motion to dismiss the Fourth Amendment claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons stated below, the Court will grant defendant's motion to dismiss with respect to Counts II and III against the District of Columbia without prejudice.

### BACKGROUND

On December 18, 2009, plaintiff attended a holiday reception at a restaurant with several of her co-workers, where she consumed "a few drinks." Compl. ¶ 16–17. According to plaintiff, she recalls leaving the restaurant at approximately 5:00 p.m. in a sober state. *Id*. ¶¶ 17–18. Plaintiff alleges that at the restaurant she was a victim of a "date rape" drug, which caused her to lose motor skills and experience memory loss within minutes of leaving the reception. *Id*. ¶¶ 18–

19. Because of her unusual and incoherent behavior on the street, plaintiff was arrested for public intoxication and disorderly conduct and booked in the Second District at approximately 6:00 p.m. *Id*. ¶¶ 19, 21. The arresting officer described plaintiff as "nonviolent and without any distinguishing marks or scars" and noted that she could not keep her balance. *Id*. ¶ 20. At approximately 7:00 p.m., plaintiff was transferred to a hospital to "treat a laceration on her nose" and was "discharged to police custody roughly an hour later." *Id*. ¶ 21. The cause of the laceration was not reported. *Id*.

Plaintiff claims to have regained consciousness in a jail cell at approximately midnight and felt excruciating and severe pain. *Id*. ¶¶ 11, 22. Plaintiff alleges that the "sudden onset of pain after memory loss is consistent with types of 'date rape' drugs, which can numb and inhibit the body's pain receptors while . . . unconscious." *Id*. ¶ 22. According to plaintiff, an officer noticed "the loss of motor skills in her hands, which had swelled and turned a deep red color" and determined that she required medical treatment. *Id*. ¶ 23. At the hospital, medical staff recognized plaintiff and noted that the injuries to her hands did not exist on her previous visit. *Id*. ¶¶ 24–25.

After her second hospital visit, plaintiff maintains that she "experienced vivid but incomplete flash-backs" from the prior evening, including "her hand being slammed by a police vehicle's door, laying on the ground while topless and surrounded by police officers, and being aggressively manhandled." *Id*. ¶ 26. As a result of experiencing chest pain, plaintiff discovered multiple marks on her chest that she believes were caused by recent Taser shots consistent with the Taser guns she believes are used by the police department. *Id.* ¶ 31. Plaintiff asserts that her extremities were "lacerated, swollen and bludgeoned," her "arms showed deep bruises consistent with . . . manhandling," her nose and eye were "engorged and bruised," and her toenails were

torn. *Id*. ¶¶ 28–30. Plaintiff alleges that her doctor noted the injuries "appeared to have been sustained by a beating, rather than from a less nefarious cause, like a bad fall," *id*. ¶ 33, but there are no reports of officers using force on plaintiff, *id*. ¶ 32.

Because of these alleged injuries, plaintiff states that she continues to experience intense pain and difficulty accomplishing daily tasks. *Id*. ¶¶ 34–35. Plaintiff notes that she could not use her upper extremities without sharp shooting pain for the first three months after the incident." *Id.* ¶ 34. She alleges that she is still undergoing rehabilitative surgeries, procedures, and intensive drug therapy. *Id.*

Plaintiff filed this lawsuit on December 17, 2010, alleging three claims: Count I for assault and battery; Count II for excessive force; and Count III for unreasonable seizure.[1] The District moves to dismiss Counts II and III, contending that plaintiff has failed to state a claim sufficient to hold the District liable under 42 U.S.C. § 1983 on the theory of municipal liability.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

---

1   The claims against the Unknown Offices are brought against them in their individual and official capacities. Compl. ¶ 5.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted). And the fact that the case before the Court arises under section 1983 does not relieve the plaintiff of the obligation to satisfy the criteria established in *Iqbal* and *Twombly*. *Smith v. District of Columbia*, 674 F. Supp. 2d 209, 213–14 & n.2 (D.D.C. 2009).

## ANALYSIS

Counts II and III of plaintiff's complaint seek to hold the District liable under 42 U.S.C. § 1983. To state a claim against a municipality under section 1983, a plaintiff must plead

sufficient facts to indicate the municipality was acting in accordance with an official government policy or custom, and that it was the policy that caused the claimed constitutional deprivation. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691, 694 (1978); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *Smith*, 674 F. Supp. 2d at 212. Indeed, the policy or custom must be "the moving force behind the constitutional violation." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986), quoting *Monell*, 436 U.S. at 694; *see also Tuttle*, 471 U.S. at 823 (requiring an affirmative link between the city's policy and alleged constitutional violation).

A municipality cannot be liable for the unconstitutional conduct of its employees based simply on a *respondeat superior* or vicarious liability theory. *Monell*, 436 U.S. at 693; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "[W]hile Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*." *Pembaur v. City of Cincinnati,* 475 U.S 469, 479 (1986) (emphasis in original). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id*. This requirement flows directly from the statute itself.

Although the complaint contains detailed allegations about the injuries plaintiff sustained and what she recalls from the night she spent in police custody, it fails to allege the necessary "affirmative link" between those injuries and a governmental policy. *See Tuttle*, 471 U.S. at 823; *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Based on the description of plaintiff's injuries in the complaint, which the Court accepts as true on a motion to dismiss, it is apparent that something terrible happened to plaintiff on the date in question, and plaintiff

alleges that she suffered an attack at the hands of the officers overseeing her custody. But the complaint is devoid of any further allegations that the alleged misconduct by individual officers grew out of any custom or policy of the MPD or the District. The only allegation plaintiff makes that connects the District to her injuries at all is the statement that the District employs the Unknown Officers and is responsible for the operation of the police department. *See* Compl. ¶¶ 8–9. But this allegation is insufficient to state a claim for municipal liability under *Monell*.

In the opposition to the motion to dismiss [Dkt. # 17], plaintiff provides additional facts that could be construed to support a policy or custom under *Monell*. She argues that the District was "deliberately indifferent to the widespread use of TASERs by the [police]" and did "not have a specific policy regarding appropriate TASER use." Pl.'s Opp. at 3. But the Court may only consider the facts set forth in the complaint when deciding a motion to dismiss. *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 187 (D.D.C. 2007) (holding that "[t]he Court is limited to the four corners of the complaint"). Because these facts are not alleged in the complaint, the Court may not properly consider them here. Counts II and III therefore fail to state claim.

## CONCLUSION

For the foregoing reasons, the Court will grant the partial motion to dismiss without prejudice with respect to Counts II and III against the District of Columbia. The remaining claims are: Count I against all defendants; Counts II against the Unknown Officers; and Count III against the Unknown Officers. A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: October 25, 2011